UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GEORGE L. QUINTANA,

                      Plaintiff,                        24-CV-7840 (VF)

          -against-

                                            **OPINION & ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

-------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Plaintiff George L. Quintana ("Plaintiff") seeks judicial review of a final determination by Defendant, the Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Before the Court is Plaintiff's motion for judgment on the pleadings pursuant to 42 U.S.C § 405(g). See ECF No. 11. For the reasons set forth below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

### A. Summary of Procedural History

Plaintiff, a 56-year-old male with a high school education, has been employed by Verizon for 25 years as a field technician. See ECF No. 6, Social Security Record ("R.") at 38-39, 205.[1] On April 10, 2019, Plaintiff was injured while completing a repair at a customer's apartment, where he slipped off the second rung of a ladder and fell on the floor. R. at 38, 41. Plaintiff

---

[1] The page numbers for citations to the Social Security Record at ECF No. 6 are to the original pagination in those documents. Otherwise, the page numbers for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

injured his back, shoulder, and neck. R. at 41. He stopped going to work on April 11, 2019. R. at 38. From 2020 to 2022, Plaintiff did not work and was receiving worker's compensation. R. at 40. With "constant therapy," in February or March 2023, Plaintiff was able to return to work at Verizon, working in his prior job, with no restrictions. R. at 36, 46-47. Because Plaintiff had not returned to work for a period of over nine months, the return was considered a trial period. R. at 19, 36-37, 39-40.

On February 4, 2022, Plaintiff filed his application for Disability Insurance Benefits.[2] R. at 176-77; see also ECF No. 1 at ¶ 5. Plaintiff stated that he could not stand, sit, walk, or lift. R. at 216. Plaintiff further stated that he could not lift more than 10-15 pounds, and that squatting, bending, standing, and reaching "all hurt for more than 5-10 [minutes]." R. at 221. Plaintiff stated that he felt pain in his left shoulder, lower back, and neck, but that "through therapy it feels much better." R. at 226. The claim was initially denied on May 10, 2022. R. at 54-69; see also ECF No. 1 at ¶ 6. Plaintiff's claim was denied again upon reconsideration on September 29, 2022. R. at 108-113; see also ECF No. 1 at ¶ 6. Plaintiff filed a request for a hearing on November 8, 2022. R. at 120-21.

On April 25, 2023, Plaintiff and his counsel appeared for a hearing before Administrative Law Judge Brian W. Lemoine ("ALJ"). R. at 30-53; see also ECF No. 1 at ¶ 7. At the hearing, Plaintiff testified that he experiences back pain "every day" that feels like "a stabbing going down [his] left leg," with occasional numbness and tingling in both feet. R. at 41. Plaintiff indicated that the pain, although not "consistent" occurred "at least every day." R. at 42. Plaintiff also suffered from neck and left shoulder pain every day. Id. Plaintiff was unable to lift his arm

---

[2] Although Plaintiff listed his onset date of disability as April 1, 2019, in his application (R. at 176), at the hearing before the Administrative Law Judge, Plaintiff confirmed the onset date as April 11, 2019 (R. at 38).

over his shoulder. Id. Plaintiff confirmed that he was right-handed. Id. Plaintiff was unable to sit or stand for more than ten minutes due to back pain and could walk about "one, one and a half city blocks." R. at 42-43. Plaintiff could not lift more than ten to fifteen pounds. R. at 43. Plaintiff experienced difficulties: grocery shopping because it required walking to the store and around the store; getting dressed when he had to bend over to put on socks and shoes; and mopping due to the twisting motion it required. R. at 44-45. Plaintiff was prescribed Cyclobenzaprine to treat his pain, but it made him "a little bit lightheaded and sleepy." R. at 45-46; see also R. at 206, 234.

During the hearing, Andrew Vaughn, a vocational expert, testified that Plaintiff's job as a television line technician was "listed as heavy, SVP of 6." R. at 48-49. The ALJ asked Vaughn to consider a hypothetical individual of the same age, education, and past work experience as Plaintiff who could perform a limited range of work at the light exertional level, with limitations on postural positions, kneeling and balancing, and overhead reaching with the left upper extremity, with the claimant being right-hand dominant. R. at 49-50. Vaughn testified that such an individual could not perform Plaintiff's previous job, but could perform other jobs in the national economy, such as assembler, cleaner, and cafeteria attendant. R. at 50. The ALJ then asked Vaughn to consider the same hypothetical individual but limited to sedentary work. R. at 51. Vaughn testified that such an individual could perform the jobs of election clerk, ticket counter, and sorter. R. at 51-52. The ALJ then asked Vaughn to consider the same hypothetical individual with the additional limitations of being off task 15 percent or more of the workday or absent more than one day per month. R. at 52. Vaughn testified that such an individual would not be able to maintain any employment. Id.

3

On August 25, 2023, the ALJ issued his written decision, denying Plaintiff's claims and concluding that Plaintiff had not been under a disability from April 1, 2019, to the date of the decision. R. at 17-25. On September 13, 2023, Plaintiff requested review of the ALJ's decision, and the request was denied on August 15, 2024. R. at 1-6, 168-70, 304-06; see also ECF No. 1 at ¶ 8. The denial made the August 25, 2024 decision of the ALJ the final action of the Commissioner. See Lesterhuis v. Colvin, 805 F. 3d 83, 87 (2d Cir. 2015) (per curiam) ("If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.") (citation omitted).

On October 16, 2024, after exhausting his administrative remedies, Plaintiff, represented by counsel, commenced the instant action seeking judicial review of the ALJ's decision, and requesting that this Court remand the case back to the Commissioner. See ECF No. 1 at ¶ 11(c). On December 16, 2024, the Commissioner filed the Administrative Record, constituting the answer. ECF No. 6. On December 19, 2024, the Honorable Mary Kay Vyskocil granted the parties' consent to the undersigned's jurisdiction. ECF No. 8. Thereafter, on April 16, 2025, Plaintiff moved for judgment on the pleadings and submitted a memorandum of law in support of his motion. ECF No. 11-12. On July 14, 2025, the Commissioner submitted an opposition brief. ECF No. 14. Plaintiff filed a reply brief on July 28, 2025. ECF No. 15.

### B. Medical Evidence

#### 1. Dr. David Kesselman - Chiropractor

On April 12, 2019, two days after his accident, Plaintiff began treatment with Dr. Kesselman, a chiropractor. R. at 845. Plaintiff reported "neck pain to left arm, [and] low back pain to both legs." Id. (emphasis omitted). Dr. Kesselman noted that Plaintiff's pain was "constant" and that painful activities included "sitting, getting up, [and] lifting." Id. Upon examination, Dr. Kesselman noted "spinal tenderness, fixation, muscle spasm, muscle

4

tenderness, and decreased [range of motion]." Id. Dr. Kesselman found "patient totally disabled from work at this time thru [sic] 5/29/19." R. at 846 (emphasis omitted). On May 15, 2029, an MRI of Plaintiff showed lumbar spine anterolisthesis of L5 on S1 and disc bulge of L4-L5. R. at 848.

During an examination on June 12, 2019, Dr. Kesselman noted that Plaintiff complained of "constant (75 to 90% of awake time) cervical pain bilaterally," which "seem[s] to effect everyday movements," including "difficulty pulling/pushing, turning head, carrying heavy objects . . . , due to severe pain [and] spasms and discomfort." R. at 850. Dr. Kesselman diagnosed Plaintiff with low back pain, lumbar segmental dysfunction, lumbar radiculitis, muscular spasm of back, pain in neck, cervical radiculopathy, and cervical segmental dysfunction. R. at 851. Dr. Kesselman opined that Plaintiff "continues to be temporarily totally precluded from regular work duties such as carrying heavy equipment, climbing poles and ladders, bending, sitting/standing for prolonged periods, and twisting without the onset of spasms, discomfort, and cramping." Id. He further opined that plaintiff was "unable to work in a restricted capacity at this time" and "is to remain out of work [through] 07/20/19." Id.

Between May 2019 and March 2022, Dr. Kesselman saw Plaintiff nearly every month, and often times multiple times a month, each time finding him 100% disabled. R. at 312-14, 322-24, 390-92, 538-40, 547-51, 557-58, 579-80, 582-84, 598-600, 620-22, 649-51, 655-60, 663-85, 688-92, 720-21, 857-58, 869-70, 871-72. Many of these visits are documented by a form, where Dr. Kesselman checked certain boxes regarding Plaintiff's condition. See, e.g., R. at 312-14, 322-24, 390-92, 538-40, 547-51, 557-58, 579-80, 582-84, 598-600, 620-22, 649-51, 655-60, 663-85, 688-90, 691-92. Dr. Kesselman also provided narrative analyses of Plaintiff's condition during this period. For example, from an examination dated July 13, 2020, Dr. Kesselman noted

that Plaintiff "continues to experience moderate pain in his lower back" and has "difficulty bending, pulling/pushing, stretching, and twisting" as well as "constant pain in his neck that radiates to left shoulder." R. at 491. Dr. Kesselman's neurological evaluation noted "[s]ensory deficits" that caused "pain which is seriously affecting his daily activities," including "bilaterally at L3," "on the left side" at L4 and L5, and "bilaterally at S1." Id. Dr. Kesselman's postural evaluation noted "anomalies which included cervical [and] lumbar muscle tension bilaterally." Id.

During an examination performed on November 4, 2019, Dr. Kesselman noted that Plaintiff complained of pain that "seem[ed] to effect everyday movements" and "radiates to his hips, buttocks, and legs," as well as bilateral neck pain "causing him difficulty pulling/pushing, turning body bilaterally, twisting head bilaterally, carrying heavy objects, etc., due to severe pain [and] spasms and discomfort." R. at 857. Dr. Kesselman also noted "an increased lumbar lordotic curve" as well as "mild swelling through the L4-L5 bilateral paraspinal region" and that Plaintiff was "quite tender to deep palpation of the lumbar spine." R. at 857-58.

After an examination performed on September 23, 2020, Dr. Kesselman noted that Plaintiff reported constant lumbar bilateral pain that radiates into his legs, as well as neck pain that "seem[s] to effect everyday movements" and that "radiat[es] into his arms." R. at 869. A visual evaluation "revealed an increased cervical/lumbar lordotic curve," and a "sensory perception" evaluation noted areas of hypoesthesia "corresponding to the nerve root levels of the L4 on the right and L3-L4, and L5-S1 on the left." Id. Dr. Kesselman noted "mild swelling through the L3-L5 bilateral paraspinal region" and that Plaintiff was "quite tender to deep palpation of the lumbar spine." R. at 870. Dr. Kesselman made similar findings after an examination on September 24, 2021. R. at 871-72.

During an examination on June 7, 2022, Dr. Kesselman noted that Plaintiff's complaints included moderate pain in his neck and low back. R. at 761. He generally found mild to moderate myofascial pain along Plaintiff's spine. Id. Dr. Kesselman's post-treatment assessment found subluxation complex of the lumbar and cervical region, muscle spasms of the back, and radiculopathy of the lumbosacral and cervical region. Id. Dr. Kesselman concluded that Plaintiff "has a moderate disability (50%) at this time." R. at 761. Dr. Kesselman reached similar findings at near-weekly re-examinations performed between July 2022 and May 2023. R. at 735-81, 873-84.

2. Dr. Stephen Huish - Physician

Plaintiff was seen by Dr. Stephen Huish beginning on May 21, 2019. R. at 512. Dr. Huish noted that Plaintiff complained of "pain, spasm, and difficulty sitting, standing, bending, carrying, and lifting," as well as pain in his left shoulder which was "worse at night with difficulty lifting, carrying, pushing, and pulling and with attempts at overhead activity." Id. On physical examination, Dr. Huish found that Plaintiff had "tenderness in the mid to lower cervical spine with paravertebral spasm, which is moderate," "[l]eft rotation is to 50 degrees with pain," and that Plaintiff's "low back reveals straightening with dorsal tenderness and paravertebral spasm at L3-L4, L4-L5, and L5-S1[.]" Id. Dr. Huish also noted that Plaintiff's "[l]eft shoulder reveals considerable tenderness over the bicipital groove," "[f]orward flexion and abduction are to 110 and 90 degrees, respectively with pain and some substitution," "clicking on external rotation with weakness of the external rotator," and "weakness of the supraspinatus." R. at 513. Dr. Huish's impressions were cervical strain with myofascial pain/spasm, lumbosacral sprain/strain, and left shoulder derangement with impingement. R. at 513. Dr. Huish found that Plaintiff was "temporarily totally disabled" and "will remain out of work." Id.

Dr. Huish saw Plaintiff again from June 2019 through December 2019. R. at 307-10, 315-16, 342-43, 347-48, 352-53, 355-58, 507-09. During this time, Dr. Huish's examinations showed that Plaintiff was generally experiencing neck and back pain but was improving. For example, during a visit on July 29, 2019, Dr. Huish noted that Plaintiff "continues to complain of some back pain and neck pain" and "pain in the left shoulder with difficulty lifting, carrying, pushing, and pulling with pain at night." R. at 310. Upon a physical examination, Dr. Huish found that Plaintiff's "cervical and lumbar ranges of motion have improved" but there was "some increased pain on lumbar extension," as well as "tenderness" in the left shoulder." Id. Dr. Huish also found that Plaintiff was making "some objective, measurable progress with active physical therapy." Id. Dr. Huish also reviewed Plaintiff's MRI, noting the findings of "some disk bulging and spondylolysis at L5-S1." Id.

During a visit on September 24, 2019, Dr. Huish noted that Plaintiff reported that the physical therapy and chiropractic treatment had been helpful. R. at 508. After a physical examination, Dr. Huish found Plaintiff's cervical and lumbar ranges of motions as "mildly restricted" and "continued tenderness" in Plaintiff's left shoulder. Id. Dr. Huish noted that Plaintiff "is to be sent back to work according to the carrier's examiner on 10/05/19," but noted that Plaintiff "remains disabled." Id. During a visit on November 4, 2019, Dr. Huish noted that Plaintiff's "cervical range of motion is still restricted," and Plaintiff's left shoulder experienced limitations. R. at 507. And at a visit on December 9, 2019, Dr. Huish noted that Plaintiff complained of "intermittent neck stiffness, back stiffness, and pain in the left shoulder with intermittent clicking." R. at 505. Upon a physical examination, Dr. Huish noted that Plaintiff's "cervical and lumbar ranges of motion are mildly restricted with dorsal hypertonicity and no overt spasm," and he found that Plaintiff's left shoulder "reveals continued tenderness over the

8

anterior and lateral aspect, which has improved somewhat." Id. He found that Plaintiff was "progressing nicely with chiro [sic] under the auspices of Dr. Kesselman" and that he was making "objective, measurable progress" with his left shoulder. R. at 505-07.

However, during a visit on November 17, 2020, Dr. Huish reported that Plaintiff stated that he had neck pain, which was "intermittent and more moderate," but that "[h]is back pain has been more severe," and that his left shoulder was "getting progressively worse." R. at 503. Upon a physical examination, Dr. Huish found that Plaintiff's "cervical spine reveals moderate tenderness with dorsal paravertebral spasm," his "[l]ow back reveals more marked spasm with restriction range of motion," and his "left shoulder reveals worsening tenderness over the anterior and later aspect," including limitations in his extensions and rotations of the shoulder. Id.

### 3.    Dr. Ji Hoon Kim - Chiropractor

On May 16, 2019, Dr. Ji Hoon Kim performed an "independent chiropractic evaluation" on Plaintiff. R. at 458. Dr. Kim noted that Plaintiff "complain[ed] of pain in his neck, lower back and left shoulder." Id. Dr. Kim reported that Plaintiff could walk one city block and sit for ten minutes "before being in too much pain." R. at 459. He further reported that Plaintiff had difficulty with stairs, and that "[r]eaching overhead, bending, walking, sleeping, and sitting makes the pain worse." Id. Dr. Kim's examination of Plaintiff's spine "revealed no spasms" and "minimal tenderness to palpitation." Id. Dr. Kim noted that his "[n]eurological examination of the upper extremities demonstrated normal strength[.]" Id. Dr. Kim's evaluation of the thoracic spine and lumbar spine also found no spasms and no paraspinal tenderness. R. at 460. Dr. Kim diagnosed Plaintiff with cervical and lumbar spine sprain/strain. Id. Dr. Kim concluded that "the examination revealed findings of restricted vertebral motion which indicate that full benefit from

9

therapy has not been obtained." Id. Dr. Kim found "[f]rom a chiropractic standpoint," that

Plaintiff had a "mild (25%) causally-related disability." Id. He found that Plaintiff was "not

capable of returning to work full duty at this time" but that he was "capable of working an 8 hour

work day, and carrying out his activities of daily living," if he did not lift greater than 40 pounds.

R. at 461.

On August 29, 2019, Dr. Kim examined Plaintiff again. R. at 467. Dr. Kim noted that

Plaintiff complained of "pain in his neck, lower back and left shoulder," and headaches. Id. He

noted that Plaintiff "does feel better now, compared to when he started treatment." R. at 468. Dr.

Kim also indicated that Plaintiff has "shooting pain" and difficulty with stairs. Id. Upon

examination, Dr. Kim found no spasms and noted that Plaintiff's range of motion was in the

normal range, other than the extension of his lumbar spine. R. at 469. Dr. Kim did not evaluate

Plaintiff's left shoulder. Id. Dr. Kim noted that Plaintiff had "restricted vertebral motion which

indicate[s] that full benefit from therapy has not been obtained." R. at 470. Dr. Kim found that

Plaintiff had no causally-related disability and could return to work. Id.

On June 23, 2020, Dr. Kim performed a re-examination of Plaintiff. R. at 462. When Dr.

Kim asked if Plaintiff felt better after his chiropractic treatments, Plaintiff stated that it varied but

that he was still in pain. R. at 463. He noted that Plaintiff received some relief from physical

therapy, but that Plaintiff had difficulty with stairs, with sitting for more than fifteen minutes,

and that bending, walking, and sleeping made the pain worse. Id. Upon examination, Dr. Kim

found that there was no spasm or tenderness to Plaintiff's cervical spine. R. at 464. Dr. Kim's

evaluation of the thoracic spine and lumbar spine also found no spasms. Id. Dr. Kim diagnosed

Plaintiff with cervical and lumbar spine sprain/strain, but found that "the chiropractic

examination demonstrated no objective positive findings" and that Plaintiff "requires no further

10

causally-related chiropractic treatment." R. at 464-65. Dr. Kim also found that Plaintiff was able to return to work "full duty in an 8 hour work day without restrictions." R. at 465.

### 4. Dr. Ronald Mann - Orthopedist

On October 22, 2019, Dr. Ronald Mann examined Plaintiff. R. at 401. Dr. Mann noted that Plaintiff complained of "pain in his lower back, neck and left shoulder and numbness down both legs," as well as "headaches and difficulty with walking, bending, pushing, pulling, climbing, lifting and sleeping." Id. Upon examination of Plaintiff's cervical spine, Dr. Mann noted some limitation in extension and bending but "no vertebral tenderness and no paravertebral spasm noted." R. at 402. On examination of Plaintiff's thoracolumbar spine, Dr. Mann noted "minimal vertebral tenderness and no paravertebral spasm noted." Id. Upon examination of Plaintiff's left shoulder, Dr. Mann noted tenderness and limitations to rotation and extension, and that "impingement sign was positive." R. at 403. Dr. Mann diagnosed Plaintiff with sprain or strain of the cervical spine, lumbar spine, and left shoulder. Id. Dr. Mann found that Plaintiff had a "moderate (50%) disability," concluding that Plaintiff "may work an eight[-hour] day light duty with restrictions of lifting greater than 10-25 lbs. and no excessive overhead work." Id.

On February 25, 2020, Dr. Mann re-examined Plaintiff. R. at 450. Dr. Mann noted that Plaintiff complained of "pain in his lower back and shoulder," "numbness down his left leg and foot," and "difficulty walking, bending, pushing, pulling, climbing, lifting and sleeping." Id. Dr. Mann's examination, diagnoses, and conclusions were the same as those from his October 2019 examination. Id. at 451-52. Dr. Mann made the same findings pursuant to a re-examination on September 3, 2020. R. at 471-73.

Dr. Mann examined Plaintiff again on May 14, 2021. R. at 454. He noted that Plaintiff was treated with physical therapy and chiropractic manipulations, and had left shoulder

11

injections. Id. Dr. Mann also noted that Plaintiff complained of "neck pain, back pain, and left shoulder pain and decreased motion." Id. Dr. Mann found that Plaintiff "is able to do activities of daily living and self-care" and that Plaintiff "drove to this examination." R. at 455. Dr. Mann observed that Plaintiff "walked with a slow gait pattern," but was "in no acute distress" and "got on and off the examination table without difficulty." Id. Dr. Mann noted that Plaintiff's left shoulder had a "positive impingement sign" as well as a "[p]ositive painful arc." R. at 456. Dr. Mann again diagnosed Plaintiff with sprain or strain of his cervical spine, lumbar spine, and left shoulder. Id. Dr. Mann concluded that Plaintiff had "reached maximum medical improvement" and "can return to work in a light-duty capacity avoiding excess overhead lifting with his left arm," including "avoiding lifting more than 20 pounds." R. at 456-57.

5.   Dr. Michael Healy – Consultative Examiner

Plaintiff had a consultative examination with Dr. Michael Healy on March 28, 2022. R. at 696. At that time, Plaintiff reported pain in his back and left shoulder, with difficulty raising his shoulder above horizontal, and back pain which worsened with prolonged standing or walking, as well as neck pain. Id. Dr. Healy noted that Plaintiff was in "slight discomfort," could "[s]quat 30%," and needed "no help changing for exam or getting on and off exam table," but Plaintiff could not "rise from [a] chair without difficulty." R. at 697. Dr. Healy noted that Plaintiff's cervical spine showed "decreased flexion and extension," as well as "decreased [range of motion] of the left shoulder." R. at 697-98. Dr. Healy concluded that Plaintiff had "moderate to marked limitations standing, bending, lifting, and climbing stairs, as well as reaching, grasping, and holding objects with the left upper extremity." R. at 698.

6.  <u>Dr. A Saeed & Dr. S. Putcha – State Agency Medical Consultants</u>

On May 4, 2022, state agency medical consultant Dr. A. Saeed reviewed the record and opined that Plaintiff could perform a range of light exertional work. R. at 62-65. Dr. Saeed found that Plaintiff could occasionally lift and carry up to 20 pounds and frequently up to 10 pounds. R. at 62. Dr. Saeed also found Plaintiff could sit, stand, and/or walk for around six hours in an eight-hour workday. <u>Id.</u> Dr. Saeed found that Plaintiff had limited ability to reach overhead with the left arm. <u>Id.</u> at 64. On September 21, 2022, state agency medical consultant Dr. S. Putcha reviewed Plaintiff's records and reached the same conclusion as Dr. Saeed. R. at 79-83.

## DISCUSSION

### A.  Legal Standards

1.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides[.]" 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks and citations omitted); <u>accord</u> <u>Greek v. Colvin</u>, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); <u>see generally</u> 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence is "more than a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>accord</u> <u>Greek</u>, 802 F.3d at 374-75; <u>Burgess v. Astrue</u>, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and

means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

2. <u>Weighing Medical Opinions</u>

For claims such as this one, filed on or after March 17, 2017, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating physician rule. See <u>Acosta Cuevas</u>, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2011), <u>adopted by</u>, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (collecting cases). Under the new regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, ALJs "will articulate in [their] determination or decision how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(b) (emphasis added). ALJs must consider all medical opinions and determine their respective persuasiveness considering supportability; consistency; relationship of the medical source to the claimant; specialization; and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5).

The supportability and consistency factors are the "most important." 20 C.F.R. § 404.1520c(a). Accordingly, the regulations mandate that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2) (emphasis added); <u>see also</u> <u>Rivera v. Comm'r of Soc. Sec.</u>, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), <u>adopted by</u>, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); <u>Vellone v. Saul</u>, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), <u>adopted by</u>, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain his/her approach with respect to the first two factors when considering a medical

15

opinion.") (emphasis in original). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Although ALJs are only required to articulate their consideration of those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. 20 C.F.R. § 404.1520c(c).

### 3.   Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment" (id. at § 404.1520(a)(4)(ii)), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities" (id. at § 404.1520(c)). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at §§ 404.1520(a)(4)(iii), 404.1520(d). If so, the claimant is considered disabled. Id. Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. at § 405.1520(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the

16

Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. at § 405.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. at § 405.1520(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

**B.  The ALJ's Decision**

On August 25, 2023, the ALJ determined that Plaintiff was not disabled under the Act. R. at 25. At step one, the ALJ determined that Plaintiff had recently returned to work and therefore was currently engaged in substantial gainful activity. R. at 19. However, because Plaintiff had recently returned to work and had not been at work for more than nine months, Plaintiff's return to work was considered a trial period, and thus Plaintiff was not considered to be gainfully employed. Id. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease with multilevel bulging discs of the cervical and lumbar spine, left shoulder derangement, and obesity, each of which significantly limit his ability to perform basic work activities. R. at 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that equaled the severity of those listed in the Act. Id.

The ALJ considered the opinions of Dr. Saeed and Dr. Putcha, the state agency consulting physicians who reviewed Plaintiff's medical records and found that Plaintiff could perform light work. R. at 22. The ALJ found the opinions of Drs. Saeed and Putcha persuasive as they were "internally consistent with the evidence available at the time they were given[.]" Id.

17

Additionally, the ALJ found that the opinions were supported by "more recently received evidence," as both opinions "do not note any worsening in the claimant's condition, with the claimant's ultimate return to work suggestive of improvement." Id.

The ALJ also considered the opinion of Dr. Mann, concluding that his opinion that Plaintiff was moderately disabled was "partially persuasive." R. at 23. Specifically, the ALJ found Dr. Mann's opinion "that the claimant is 50% disabled is not persuasive as it is vague and not functionally relevant," but that "[t]he opinion that the claimant is limited to not lifting over 25 pounds and not working excessively overhead is generally persuasive," because "the claimant's left shoulder impairment supports limited overhead reaching with the left arm, and his back pain and objective scans support[ ] not lifting over 25 pounds." Id.

The ALJ considered the findings of Dr. Healy, who found that Plaintiff had "moderate to marked" limitations in standing, bending, lifting, and climbing stairs, as well as reaching, grasping and holding objects." R. at 22. But the ALJ found Dr. Healy's opinion "unpersuasive as "overly vague, noting moderate to marked limitations," and that Dr. Healy's opinion finding "limitations in grasping and holding objects" was "inconsistent with, and unsupported by, the claimant's treatment as a whole, which show difficulty reaching overhead but not difficulty in grasping or holding." Id.

As to Dr. Kesselman and Dr. Huish, the ALJ noted that both opined that Plaintiff was "temporar[il]y completely 100% disabled[.]" R. at 23. The ALJ found that the opinions of Drs. Kesselman and Huish were unpersuasive because they were "conclusory and reserved for the commissioner, temporary in duration, possibly related to the claimant's job as a line technician and not all jobs, and/or inconsistent with the objective findings and conservative treatment." Id.

18

The ALJ found the opinion of Dr. Kim, who found that Plaintiff could return to work without restrictions, was unpersuasive because it was "inconsistent with the opinion of Dr. Mann and unsupported by the objective scans which support greater limitations." Id.

Regarding Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ found that the statements were "inconsistent because the medical evidence d[id] not support the severity alleged" by Plaintiff. R. at 21.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work, but that Plaintiff had the RFC to perform light work, noting that Plaintiff could "only occasionally climb, stoop, crouch, and crawl" and "occasionally reach overhead with the left upper extremity." R. at 20-21.

At step five, the ALJ considered the Plaintiff's "[RFC], age, education, and work experience" and found that there were jobs in the national economy that Plaintiff could perform. R. at 24. Based on the testimony of the Vocational Expert, the ALJ found Plaintiff could perform jobs with light exertion levels, including as an assembler, cleaner, or cafeteria attendant. Id. Thus, the ALJ concluded that the claimant had not been under a disability as defined by the Act from April 1, 2019, through August 25, 2023. R. at 25.

## C. Analysis

Plaintiff attacks the ALJ's decision, arguing that the ALJ erred in his consideration of the medical opinion evidence. ECF No. 12 at 12-14. More specifically, Plaintiff contends that the ALJ's assessment of the opinion of Dr. Kesselman did not adequately explain how he considered the consistency and supportability of the opinion in light of the other medical evidence. Id. at 14-15. As explained below, Plaintiff is correct that the ALJ did not properly assess the

supportability and consistency factors when analyzing Dr. Kesselman's opinion. This error alone warrants a remand.

Plaintiff argues that the ALJ erred by failing to consider, or even discuss, Dr. Kesselman's opinions. ECF No. 12 at 14. Dr. Kesselman is a chiropractor who treated Plaintiff two days after his accident, and saw Plaintiff nearly every month and often multiple times a month, from April 2019 to May 2023. See supra § B.1. During those examinations, Dr. Kesselman found that Plaintiff had pain in his neck, lower back, and left shoulder, causing Plaintiff to have difficulty pulling, pushing, and carrying heavy objects, due to severe pain, spasms, and discomfort. Id. Dr. Kesselman opined that Plaintiff was 100% disabled from April 2019 to March 2022. Id. The ALJ found that the opinion of Dr. Kesselman was unpersuasive, because it was "conclusory and reserved for the commissioner, temporary in duration, possibly related to the claimant's job as a line technician and not all jobs, and/or inconsistent with the objective findings and conservative treatment." R. at 23. That was the sole analysis the ALJ provided concerning the weight he attributed to Dr. Kesselman's opinion.

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. See 20 C.F.R. § 404.1520c. The revised regulations apply to claims filed on or after March 27, 2017. Id. Because Plaintiff applied for benefits in 2022, the new regulations apply here. Under the new regulations, the ALJ considers all medical opinions and evaluates their persuasiveness based on their supportability, consistency, relationship with claimant, specialization, and other factors. See id. at § 404.1520c(a)-(c). The ALJ is required to "articulate how [he] considered the medical opinions" and state "how persuasive" the medical opinions are determined to be, with a specific explanation of the supportability and consistency factors. See id. at § 404.1520c(a)-(b); see

20

Vellone, 2021 WL 319354, at *6 ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion[.]") (emphasis in original).

"Supportability" refers to the extent to which a medical source opinion is supported by objective medical evidence and the medical source's explanations. See 20 C.F.R. § 404.1520c(c)(1). "[S]upportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." Vellone, 2021 WL 319354, at *6. "An ALJ's analysis of supportability is insufficient if there is no specific explanation of how the medical sources supported their own opinions." Ballantyne T. v. Comm'r of Soc. Sec., No. 23-CV-11182 (HJR), 2025 WL 551820, at *9 (S.D.N.Y. Feb. 19, 2025).

"Consistency" refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources. See 20 C.F.R. § 404.1520c(c)(2). "[C]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL 319354, at *6. An ALJ's analysis of the consistency factor is insufficient when the assessment "ignores or mischaracterizes medical evidence or cherry-picks evidence that supports [the ALJ's] RFC determination while ignoring other evidence to the contrary." Jackson v. Kijakazi, 588 F. Supp. 3d 558, 585 (S.D.N.Y. Mar. 3, 2022) (citing Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021)).

An ALJ's failure to properly consider and apply the requisite factors for evaluating medical source opinions is grounds for remand. See, e.g., Balotti v. Comm'r of Soc. Sec., 605 F. Supp. 3d 610, 622 (S.D.N.Y. June 6, 2022) (remanding so that ALJ can "separately discuss supportability and consistency"); Andrew G. v. Comm'r of Soc. Sec., No. 19-CV-942, 2020 WL

21

5848776, at *6-7 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency factors).

Despite having treated Plaintiff consistently for an extended period of time, the ALJ's discussion of Dr. Kesselman's opinion did not explain how he considered the opinion in light of the supportability and consistency factors. Instead, the ALJ found Dr. Kesselman's opinion "unpersuasive" because it was "conclusory and reserved for the commissioner, temporary in duration, possibly related to the claimant's job as a line technician and not all jobs, and/or inconsistent with the objective findings and conservative treatment." R. at 23. To be sure, the ALJ properly determined that Dr. Kesselman's conclusion regarding Plaintiff's ability to work was not persuasive, because it addressed the ultimate issue reserved to the Commissioner pursuant to 20 C.F.R. § 404.1520b(c)(3)(i). Evidence of this nature is considered inherently neither valuable nor persuasive and need not be analyzed in the ALJ's decision. 20 C.F.R. § 404.1520b(c). However, the ALJ failed to address the consistency and supportability of the substance of Dr. Kesselman's opinions, regarding the nature and extent of Plaintiff's alleged impairment. In short, the ALJ rejected all opinions by Dr. Kesselman, who had a longstanding examining relationship with Plaintiff, without any discussion of how the opinion was consistent with, or supported by, other opinions or evidence in the record.

Dr. Kesselman treated Plaintiff from April 2019 to May 2023, seeing Plaintiff nearly every month, and often more than once a month, over that four-year period. See supra at § B.1. During that period, Dr. Kesselman found that Plaintiff had pain in his lower back, neck, and left shoulder, which caused Plaintiff to have difficulty pulling, pushing, and carrying heavy objects, due to severe pain, spasms, and discomfort. Id. Dr. Kesselman consistently made these findings through March 2022. The treatment records indicate that Dr. Kesselman considered Plaintiff's

22

objective complaints that he was experiencing pain in his back, neck, and shoulder that led to difficulty bending, twisting, and carrying heavy objects. See, e.g., R. at 491 (noting Plaintiff's complaints of "difficulty bending, pulling/pushing, stretching, and twisting"); R. at 857 (noting Plaintiff's complaints of difficulty "pulling/pushing, turning body bilaterally, twisting head bilaterally, carrying heavy objects, etc., due to severe pain & spasms and discomfort"); R. at 869 (noting Plaintiff's "pain that "seem[s] to effect everyday movements" and that "radiat[es] into his arms"). Dr. Kesselman also performed his own examinations, documented those examinations, and explained his conclusions. See, e.g., R. at 491 (neurological evaluation noting "[s]ensory deficits" including "bilaterally at L3," "on the left side" at L4 and L5, and "bilaterally at S1"); R. at 857-58 (finding "an increased lumbar lordotic curve" as well as "mild swelling through the L4-L5 bilateral paraspinal region" and that he was "quite tender to deep palpation of the lumbar spine"); R. at 869-70 (finding areas of hypoesthesia "corresponding to the nerve root levels of the L4 on the right and L3-L4, and L5-S1 on the left").

In rejecting Dr. Kesselman's opinion, the ALJ does not explain how Dr. Kesselman's findings are unsupported by the "objective medical evidence and [the medical source's] explanations," 20 C.F.R. § 404.1520c(c)(1), or inconsistent with other evidence in the record, Girao v. Kijakazi, No. 22-CV-1419 (JLC), 2023 WL 5312064, at *16 (S.D.N.Y. Aug. 18, 2023) (explaining that ALJ must set forth how she considered the consistency of a medical opinion). But a review of the medical record indicates that Dr. Kesselman's findings are consistent with the objective medical evidence, as well as the conclusions of other examiners.

For example, Dr. Huish, who saw Plaintiff occasionally from May 2019 to November 2020, also found that Plaintiff had limitations with his lumbar and cervical spine and left shoulder, including with extension and rotation. See supra § B.2. Specifically, Dr. Huish noted

that Plaintiff complained of "pain, spasm, and difficulty sitting, standing, bending, carrying, and lifting," as well as pain in his left shoulder which was "worse at night with difficulty lifting, carrying, pushing, and pulling and with attempts at overhead activity." R. at 512. These findings were consistent with the findings of Dr. Kesselman during examinations performed on June 12, 2019, November 4, 2019, and July 13, 2020. See R. at 491 (noting that Plaintiff "continues to experience moderate pain in his lower back" which leads to "difficulty bending, pulling/pushing, stretching, and twisting" and finding limitations with extension and rotation of spine); R. at 850 (noting Plaintiff's complaints that he had pain "radiating into his left shoulder and arm causing difficulty pulling/pushing, turning head, carrying heavy objects, etc., due to severe pain [and] spasms and discomfort" as well as finding limitations with extension and rotation of spine); R. at 857 (noting that Plaintiff complained of pain that "seem[ed] to effect everyday movements" and "radiates to his hips, buttocks, and legs" as well as pain that radiates into his feet "causing him difficulty pulling/pushing, turning body bilaterally, twisting head bilaterally, carrying heavy objects, etc., due to severe pain [and] spasms and discomfort" and finding limitations with extension and rotation of spine).

Dr. Mann also examined Plaintiff in September 2020, and consistent with his earlier findings from October 2019, noted that Plaintiff complained of "pain in his neck, back, right knee and left shoulder and numbness in his feet" and "difficulty with walking, bending, sleeping and lifting," and upon examination, found Plaintiff had limitations in extension and flexion in Plaintiff's cervical and thoracolumbar spine. R. at 401-03, 471-73. Dr. Kesselman likewise found that Plaintiff complained of pain in his left shoulder and arm which caused difficulty carrying heavy objects, and Dr. Kesselman's examinations similarly found decreased range of motion, flexion, and extension in Plaintiff's spine. R. at 491-92, 850-51, 857-58.

Instead of addressing or discussing any of this medical evidence, the ALJ's analysis is the type of "*pro forma*, rote, or conclusory" statements that warrant remand. Ballantyne T., 2025 WL 551820, at *10; Shand v. Kijakazi, No. 22-CV-7479 (JLC), 2023 WL 5162994, at *15 (S.D.N.Y. Aug. 11, 2023) (finding that the ALJ's "failure to address—or even mention—the supportability of a treating physician's opinion before disregarding it as unpersuasive is clear error") (internal quotation marks and citation omitted); Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (remanding where "[t]he ALJ's assessment of the supportability of Dr. Chen and Dr. Healy's opinions is highly conclusory" because the ALJ "offered only that 'Dr. Chen's opinion is supported by record review' and that 'Dr. Healy's opinion is supported by examination'" and "[s]uch conclusory statements offer no insight into how well either doctor supported and explained their opinion and are insufficient to withstand review") (alteration and citations omitted); Jackson, 588 F. Supp. 3d at 586-87 (S.D.N.Y. 2022) (remanding where ALJ did not consider supportability other than stating that doctor's opinion was "internally consistent").

The Commissioner argues that the ALJ found that Dr. Kesselman's opinion was inconsistent with other findings in the record, because the other objective findings found Plaintiff had "normal gait, negative straight leg raise testing, and generally normal motor strength." ECF No. 14 at 16. But the ALJ explained none of this. The ALJ merely stated that Dr. Kesselman's opinion was inconsistent with other findings without pointing to the findings he was relying on and without explaining how they were inconsistent. That type of conclusory statement does not satisfy the ALJ's obligation to explain how he considered the opinion in light of its consistency with other evidence in the record. See Matthew L. v. King, No. 24-CV-0275 (RFT), 2025 WL 405812, at *2 (S.D.N.Y. Feb. 5, 2025) (remanding because the ALJ's opinion that the doctor's

25

conclusions were persuasive and "supported by, and consistent with, the rest of the psychiatric evidence of record" was conclusory); Thorne v. Comm'r of Soc. Sec., No. 20-CV-6513 (OTW), 2023 WL 579524, at *4 (S.D.N.Y. Jan. 27, 2023) (remanding where ALJ's "consideration of the consistency of [doctor's] opinion with the overall record was conclusory and failed to fulfill his duty to articulate his rationale for his finding that [doctor's] opinion was inconsistent with the record").

Because the ALJ failed to adequately evaluate the opinion evidence of Dr. Kesselman, specifically by failing to explain his analysis of the supportability and consistency factors, a remand for further proceedings in accordance with the revised regulations is required. Rivera, 2020 WL 8167136, at *17 (remanding where ALJ failed to discuss or note how opinion was consistent with other examiners' findings); Sawicki v. Comm'r of Soc. Sec., No. 21-CV-2093 (LJL), 2023 WL 5164212, at *11 (S.D.N.Y. Aug. 11, 2023) (remanding where ALJ failed to adequately explain her supportability and consistency analyses); Smith v. O'Malley, No. 23-CV-02339 (JLC), 2024 WL 1983881, at *12 (S.D.N.Y. May 6, 2024) ("[T]he ALJ's failure to sufficiently analyze the supportability and consistency of [doctor's] evaluation is grounds for remand."). Of course, "[t]hat is not to say the ALJ necessarily reached a wrong result," and "it may well be on remand the ALJ comes to the same determination." Balotti, 605 F. Supp. 3d at 621. Given the need for a remand, however, the Court does not address the question of whether the ALJ's conclusion, reached by legal error, is supported by substantial evidence. See Ballantyne T., 2025 WL 551820, at *11; Cantos v. Comm'r of Soc. Sec., No. 19-CV-04269 (GBD) (SDA), 2020 WL 5371341, at *13 (S.D.N.Y. July 31, 2020), adopted by, 2020 WL 5369919 (S.D.N.Y. Sept. 8, 2020).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is

**GRANTED**, and this case is **REMANDED** for further administrative proceedings consistent

with this order. The Clerk of Court is respectfully directed to close the gavel at ECF No. 11,

enter final judgment in favor of Plaintiff, and close the case.


DATED:      March 30, 2026
            New York, New York


_____
VALERIE FIGUEREDO
United States Magistrate Judge